JOHN R. ROBERTS
Bankruptcy Trustee
P.O. Box 1506
Placerville, CA 95667-1506
(530) 626-6441

FILED
April 20, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002571975

UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IN RE:

**HOLY COW INC.**

Debtor(s).
_____/

CASE NO. **09-48545-B-7**

DC NO. **JRR-1**
DATE: **MAY 18, 2010**
TIME : **9:32 A.M.**
COURTROOM: **32**

**EXHIBIT "A" TO MOTION FOR SALE OF ASSETS**
**[11 U.S.C. § 363]**

Asset Purchase Agreement                                                          Page 2

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement"), is entered into as of the 20th day of April, 2010 by and between Claire-Sprayway, Inc., a Delaware corporation ("Buyer"), and John R. Roberts, not personally but solely as the Chapter 7 Bankruptcy Trustee ("Seller") of Holy Cow, Inc. ("Debtor").

## W I T N E S S E T H:

A. WHEREAS, Buyer desires to purchase specific assets of Seller and Seller desires to sell such assets to Buyer.

B. WHEREAS, on January 27, 2010 (the "Petition Date"), Debtor filed a voluntary petition for relief (the "Petition") under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of California, Sacramento Division (the "Bankruptcy Court"), captioned In re Holy Cow, Inc., Case No. 2009-48545-B-7 (the "Chapter 7 Case").

C. WHEREAS, the United States Trustee's Office appointed Seller as the Trustee in the Chapter 7 Case.

C. WHEREAS, on April 20, 2010, Seller filed a Motion for Sale of Assets pursuant to 11 U.S.C. § 363 (the "Sale Motion"). The Sale Motion is set for hearing before the Bankruptcy Court on May 18, 2010.

WHEREAS, in connection with the Chapter 7 Case, and subject to the terms and conditions contained herein, following the entry of a Sale Order (as defined herein) finding the Buyer as the winning bidder and subject to the terms and conditions thereof, Seller shall sell, transfer and assign to the Buyer, and the Buyer shall purchase and acquire from Seller, pursuant to Sections 105 and 363 of the Bankruptcy Code, the Purchased Assets (as defined herein).

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants of the parties set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto do hereby mutually agree as follows:

## ARTICLE I
## PURCHASE AND SALE OF ASSETS

1.1 Pursuant to Sections 105 and 363 of the Bankruptcy Code, subject to the terms and conditions of this Agreement, on the Closing Date, Seller shall sell, convey, transfer, and assign to Buyer, free and clear of all liens and encumbrances, and Buyer shall purchase and acquire from Seller, all of properties, assets and rights of Debtor existing as of the Closing (as defined herein), real or personal, tangible or intangible and whether or not related to Debtor's pre-Petition Date business (collectively, the "Purchased Assets") *except* for the Excluded Assets (as defined herein), . For the purposes of this Agreement, the term "Purchased Assets" shall expressly include the foregoing:

## EXHIBIT "A"

(a) All of Debtor's rights to (i) the trade name, logo and trademark for "Holy Cow" and "Holy Cow, Inc.", the formulas for Holy Cow Glass Cleaner, Holy Cow Concentrate and Holy Cow All Purchase Cleaner and (ii) all other intellectual property rights of any nature, including, without limitation, copyrights, patents, trademarks, trade names, service names, brand names, logos, Internet domain names, trade secrets, general intangibles of a like nature, together with the goodwill associated with any of the foregoing, and all applications, registrations and renewals thereof, and any rights, claims or causes of action of Debtor against third parties relating to the foregoing (collectively, the "Intellectual Property");

(b) All of Debtor's finished goods and other inventory, including, without limitation, all samples and returned product, packing materials, empty bottles, sprayers, molds for bottles and the inventory. set forth on Schedule 1.1(b) hereto;

(c) All of Debtor's customer list;

(d) The contents of the 53 foot cargo trailer leased from Transport International Pool, Inc. (the "Trailer") including, without limitation, the 3-pack and 2-pack cardboard boxes therein (the "Trailer Contents);

(e) All of Debtor's machinery and equipment, including, *inter alia*, all computer hardware and software; and

(f) All business records related to Debtor's business and the Intellectual Property, including without limitation (i) all documentation evidencing Debtor's first use of its Intellectual Property, and (ii) all such records located on website servers and all other locations and in whatever media.

1.2 Excluded Assets. Nothing contained herein shall be deemed to sell, transfer, assign or convey any of the following assets of Debtor to Buyer (collectively, the "Excluded Assets"), and Seller shall retain all right, title and interest to, in and under the following:

(a) any and all rights of Seller under this Agreement;

(b) cash and cash equivalents of Debtor;

(c) accounts receivable of Debtor;

(d) any minute books, stock ledgers, corporate seals and stock certificates of Debtor, and other similar books and records that Debtor is required by law to retain or that Seller determines is necessary or advisable to retain, including tax returns, financial statements and reports;

(e) refunds, credits and rebates of taxes; and

(f) except for those rights, claims and causes of action described in Section 1.1(a) above, all rights, claims, and causes of action of Debtor or Seller against third parties and the proceeds thereof, including, without limitation, all avoidance actions or similar causes of action arising under Sections 544 through 553 of the Bankruptcy Code.

ARTICLE II
ASSUMED LIABILITIES

2.1 Liabilities of Seller. In connection with this transaction or otherwise, Buyer is not assuming, and Debtor shall be solely and exclusively liable with respect to, any claim (as defined in the Bankruptcy Code), expense, obligation, responsibility or liability of any nature whatsoever (including, without limitation, accrued, absolute, contingent or otherwise) of Debtor or Seller. All of such expenses, obligations, responsibilities and liabilities have been retained in all respects by Debtor.

ARTICLE III
PURCHASE PRICE

3.1 Purchase Price. The purchase price (the "Purchase Price") for the Assets shall be $25,000, and Seller acknowledges receipt of a refundable downpayment of $2,500 (the "Deposit"). Seller hereby agrees to hold the Deposit in escrow pending the Closing and to return the Deposit pursuant to Article VII hereof.

3.2 "As Is" Transaction. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN ARTICLE IV OF THIS AGREEMENT, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE PURCHASED ASSETS. ACCORDINGLY, BUYER WILL ACCEPT THE PURCHASED ASSETS AT CLOSING "AS IS" AND "WHERE IS."

ARTICLE IV
REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Buyer, as follows:

4.1 Authority. Seller has the power and authority to execute, deliver, and perform all of the obligations, covenants and agreements contained in this Agreement and all writings relating hereto.

4.2 Transaction Not a Breach. Neither the execution and delivery of this Agreement or any writing relating hereto, nor the consummation by Seller of the transactions contemplated hereby or thereby, nor compliance with any of the provisions hereof or thereof will: (a) violate any statute, law, rule or regulation or any order, writ, injunction or decree of any court or governmental authority; or (b) to Seller's knowledge, violate or conflict with or constitute a default under (or give rise to any right of termination, cancellation or acceleration under) any agreement or writing of any nature by which the Assets may be bound. No consent or approval or notification to any governmental authority, or any third party, is required in connection with

the execution and delivery by Seller of this Agreement or any writing relating hereto or for the consummation of the transactions contemplated hereby or thereby, except for issuance of the Sale Order by the Bankruptcy Court.

4.3     Validity.  This agreement constitutes the legal, valid and binding obligation of Seller, and is enforceable against Seller in accordance with its terms.

4.4     Title to the Assets.  Seller holds title to the Purchased Assets free and clear of any and all mortgages, liens, pledges, charges or encumbrances of every kind, nature and description.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF BUYER

5.1     Organization.  Buyer is a corporation duly organized, validly existing and in good standing under the laws of the state of its incorporation.

5.2     Authority.  Buyer has the power and authority to execute, deliver, and perform all of the obligations, covenants and agreements contained in this Agreement and all writings relating hereto.

5.3     Validity.  This agreement constitutes the legal, valid and binding obligation of Seller, and is enforceable against Seller in accordance with its terms.

## ARTICLE VI
## CLOSING

6.1     Bankruptcy Court Filings; Auction.

(a)     Subject to Section 6.2, Seller shall pursue diligently the entry of the Sale Order and shall use all commercially reasonable efforts to comply (or obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure in connection with obtaining approval of the Sale Order.  Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order.

(b)     Seller shall schedule a final hearing on the proposed sale to Buyer of the Purchased Assets on a date and at a time agreeable to Seller, Buyer, and the Bankruptcy Court (the "Sale Hearing"), but may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.  If Seller receives one (1) or more subsequent bids in addition to this Agreement at or before the Sale Hearing, Seller will conduct an auction (the "Auction") of the Purchased Assets prior to or during the Sale Hearing.  Seller may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are not inconsistent with the Bankruptcy Code, otherwise applicable law, or any order of or

direction from the Bankruptcy Court in connection herewith. Bidding at the Auction shall begin with the proposal set forth in this Agreement and continue in minimum increments of at least $1,000 higher than the previous bid or bids.

6.2     Conditions to Closing. It shall be a condition precedent to the Closing hereunder that the Bankruptcy Court shall have entered the Sale Order in form and substance reasonably satisfactory to Seller and Buyer, and such Sale Order shall be a Final Order (as defined herein). As used herein, (a) "Sale Order" shall mean an order entered by the Bankruptcy Court which shall, among other things, (i) approve, pursuant to Sections 105 and 363 of the Bankruptcy Code: (x) the execution, delivery and performance by Seller of this Agreement (including a grant to Buyer of access to the Trailer for fifteen days following Closing in order to remove the Trailer Contents) and (y) the sale of the Purchased Assets to the Buyer on the terms set forth herein free and clear of all liens, claims and encumbrances, and (ii) find that Buyer is a "good faith" Buyer within the meaning of Section 363 (m) of the Bankruptcy Code, not a successor to Debtor, and grant Buyer the protections of Section 363 (m) of the Bankruptcy Code, and (b) "Final Order" shall mean an order or judgment: (i) as to which the time to appeal, petition for certiorari or move for review, reconsideration, amendment, modification, stay or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for review, reconsideration, amendment, modification, stay or rehearing is pending; or (ii) if an appeal, writ of certiorari, or motion for re-argument, reconsideration, amendment, modification, stay or rehearing has been filed or sought, the order or judgment has been affirmed by the highest court to which such order or judgment was appealed or certiorari has been denied, or re-argument, reconsideration, amendment, modification, stay or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal or to seek certiorari or further re-argument or rehearing has expired.

6.3     The Closing. Subject to the terms and conditions of this Agreement, the closing of the transactions contemplated under this Agreement (the "Closing") shall take within five (5) days after the Sale Order shall become a Final Order at the offices of Seller or at such other time, date and place as the parties may agree. The time and date of the Closing are herein referred to as the "Closing Date." Buyer shall have access to the Trailer for fifteen days following Closing to remove the Trailer Contents purchased hereunder.

6.4     Deliveries by Seller at Closing. At the Closing, Seller will deliver to Buyer (i) a bill of sale, in form and substance satisfactory to Buyer, which shall vest title to the Purchased Assets in Buyer as required by this Agreement, (ii), if requested by Buyer, a true and correct copy of the Sale Order, (iii) assignments of the Intellectual Property in form and substance satisfactory to Buyer, and (iv) such other documents and instruments as are reasonably requested by Buyer.

6.5     Deliveries by Buyer at Closing. At the Closing, Buyer will deliver to Seller the Purchase Price, less the Deposit.

6.6     Further Assurances prior to Closing. Subject to the other provisions of this Agreement, each of the parties shall use its commercially reasonable efforts to (a) take all actions necessary or appropriate to consummate the transactions contemplated by this Agreement and

(b) cause the fulfillment at the earliest practicable date of all of the conditions to their respective obligations to consummate the transactions contemplated by this Agreement.

## ARTICLE VII
## TERMINATION

7.1 <u>Termination of Agreement</u>. This Agreement may be terminated as follows:

(a) by the material written consent of Seller and Buyer at any time prior to Closing;

(b) by either Buyer or Seller if the Sale Order shall not have been approved by the Bankruptcy Court by the close of business on June 1, 2010; and

(c) by Buyer if Seller and the Bankruptcy Court declare or order that any other party is the successful or winning bidder at the Auction.

7.2 <u>Effect of Termination</u>. Upon termination as provided in Section 7.1 hereof, Seller shall refund the Deposit to Buyer within one (1) business day, each of the parties shall be relieved of its duties and obligations arising under this Agreement, and such termination shall otherwise be without liability to Buyer or Seller.

## ARTICLE VIII
## MISCELLANEOUS

8.1 <u>Expenses</u>. Except as otherwise provided herein, all legal and other costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such expenses.

8.2 <u>Notices</u>. Any notices or other communications required or permitted hereunder shall be sufficiently given if sent by personal delivery, registered or certified mail, or by a nationally-recognized overnight delivery service, postage or charges prepaid, addressed to such party's last known address, or such other address as shall be furnished by like notice by such party. Any such notice or communication so given by mail shall be deemed to have been given on the day personally delivered or two business days after the date so mailed.

8.3 <u>Successors and Assigns</u>. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns.

8.4 <u>Entire Agreement; Amendment</u>. This Agreement and the other instruments and agreements referred to herein embody the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all prior agreements. This Agreement may be amended, and any provision hereof waived, but only in writing signed by the party against whom such amendment or waiver is sought to be enforced.

8.5 <u>Counterparts</u>. This Agreement may be executed in one or more counterparts all of which shall together constitute one and the same instrument.

12236132v.4

8.6     Agreement to Take Necessary or Desirable Actions. Seller and Buyer each agree to execute and deliver such other documents, certificates, agreements and other writings and to take such other actions as may be necessary or desirable in order to consummate or implement expeditiously under the circumstances the transactions contemplated by this Agreement.

8.7     Captions. The captions herein are inserted for convenience or reference only and shall be ignored in the construction or interpretation hereof.

8.8     Jurisdiction, Governing Law. Without limiting any party's right to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court  This Agreement shall be governed by and construed in accordance with the laws of the state of California.

8.9     Seller's Exculpatory Clause. This Agreement is being executed by Seller solely in his capacity as Chapter 7 Trustee of Debtor, and not personally. It is expressly understood and agreed that Seller's execution of this Agreement and all other actions as taken by Seller in connection with this Agreement shall not be construed as creating any liability on the part of Seller in his individual capacity, and Buyer hereby agrees and acknowledges that Buyer shall have no claim or cause of action against Seller in Seller's individual capacity with respect to such execution or other actions.

**[Intentionally Left Blank]**

IN WITNESS WHEREOF, this Agreement has been executed on behalf of each of the parties hereto as of the day and year first above written.

SELLER:

John R. Roberts, not personally or individually but solely as Chapter 7 trustee on behalf of the bankruptcy estate of Holy Cow, Inc.

_____
Name: John R. Roberts
Title: Chapter 7 trustee on behalf of the bankruptcy estate of Holy Cow, Inc.

BUYER:

Claire-Sprayway, Inc.

By: _____ EDWARD BRCZYNSKI
Title: EVP, COO/CFO

8

# SCHEDULE 1.1(b)

3/1/2010                              Inventory Quantity on Hand

| Item # | Description | | Qty on Hand | Value |
|---|---|---|---:|---:|
| **PAN** | Pandora Inventory | | | |
| **FG** | | | | |
| AP246 | ALL PURPOSE 24 OZ | (CASE) 6 Bottles | 1,119 | 3,586.60 |
| GC246 | GLASS CLEANER 24 OZ | 24oz 6 Pack Case | 3,127 | 8,029.35 |
| | | | | **11,615.95** |
| **PKG** | | | | |
| LABEL-BOXAP246 | Label-Box AP246 | All Purpose - 24oz 6 Bottles | 12,000 | 157.82 |
| LABEL-BOXGC24 | Label-Box GC246 | Glass Cleaner - 24oz 6 Bottles | 7,000 | 91.00 |
| LABEL-ORGANIC | Label-Organic Natural | | 42,000 | 137.76 |
| | | | | **386.58** |
| **SUP** | | | | |
| BOTTLE24 | 24 Oz Clear PET Bottle | 28/400 Finish | 20,000 | 4,340.60 |
| | | | | **4,340.60** |
| | | | | **16,343.14** |

# SCHEDULE 1.1(b)

3/1/2010                                Inventory Quantity on Hand

| Item # | Description | | Qty on Hand | Value |
|---|---|---|---:|---:|
| **WS** | Sierra Chemicals - West Sacramento | | | |
| **FG** | | | | |
| AP1GCS | All Purpose 1 Gallon Case | (case) 2 jugs | 268 | 2,742.94 |
| AP246 | ALL PURPOSE 24 OZ | (CASE) 6 Bottles | 224 | 1,529.99 |
| AP246C | All Purpose 24 OZ Clear | (Case) 6 Bottles | 22 | 155.97 |
| AP246CC | All Purpose 24 OZ Clear | Canadian (Case) 6 Bottles | 331 | 2,269.94 |
| AP326 | All Purpose Cleaner 32 Oz | (case) 6 pack | 187 | 1,393.58 |
| AP326C | All Purpose Cleaner 32Oz Clear | (case) 6 pack | 219 | 1,596.06 |
| CC246 | Concentrate 24oz 6 Pack | | 214 | 1,654.12 |
| CC246C | Concentrate 24 oz Clear | (Case) 6 Bottles | 43 | 388.53 |
| CC246CC | Concentrate 24 oz Clear | Canadian (Case) 6 Bottles | 330 | 2,901.82 |
| CC326 | Concentrated Cleaner 32oz. | case (6 pack) | 636 | 6,328.06 |
| CC326C | Concentrated Cleaner 32ozClear | case (6 pack) | 33 | 330.84 |
| DG326 | Degreaser 32oz 6 Pack | | 260 | 2,472.08 |
| GC1GCS | Glass Cleaner 1 Gallon Case | (case) 2 Jugs | 13 | 47.83 |
| GC246 | GLASS CLEANER 24 OZ | 24oz 6 Pack Case | 58 | 364.23 |
| GC246CC | Glass Cleaner 24 OZ Clear | Canadian (Case) 6 Bottles | 327 | 2,110.66 |
| GC326 | Glass Cleaner 32 oz. | (case) 6 pack | 420 | 2,740.33 |
| GC326C | Glass Cleaner 32 oz Clear | (case) 6 pack | 38 | 260.65 |
| GC5G | Glass Cleaner 5 Gallon | | 6 | 92.98 |
| RF1GCS | Ranch Formula 2 1 Gal/Case | 2 Units 1 Gallon Each | 7 | 55.83 |
| RF326 | Ranch & Farm 32oz 6 Pack | | 40 | 293.44 |
| | | | | **29,729.87** |
| **PKG** | | | | |
| 3 PACK TRAY | Packaging of 3 Pack Tray | for HC0033 | 27,150 | 4,534.05 |
| AP1GCSLABEL | AP 1 Gallon Case Label | | 47,000 | 1,880.00 |
| BOX246 | Box 24oz 6 Pack | | 51,975 | 13,375.04 |
| BOX326 | Box Printed Holy Cow 32/6 or | 2 Gallon Packaging | 14,783 | 4,438.49 |
| CAP | Cap 1 Gallon | | 1,400 | 65.80 |
| DISPLAY RACK | 4 Shelf Foldable Display Rack | | 6 | 255.30 |
| JUG1G | F-Style Jug 1 Gallon | | 1,728 | 1,080.48 |
| LABEL- TV | Label - As Seen on TV | | 54,200 | 542.00 |
| LABEL-24APFREN | Label for 24 oz All Purpose | Canadian | 32,000 | 1,644.16 |
| LABEL-24CCFREN | Label for 24 oz Concentrate | Canadian | 28,000 | 1,438.64 |
| LABEL-24GCFREN | Label for 24 oz Glass Cleaner | Canadian | 29,000 | 1,490.02 |
| LABEL-AP1GB | Label - All Purpose 1 Gal Back | | 13,134 | 525.36 |
| LABEL-AP1GF | Label - All Purpose 1 Gal Frnt | | 6,184 | 247.36 |
| LABEL-AP24 | Label for 24 oz All Purpose | | 86,052 | 3,166.46 |
| LABEL-AP24C | Label - AP24oz Clear | | 18,300 | 947.03 |
| LABEL-AP32 | Label 32 Oz All Purpose | | -402 | -21.28 |
| LABEL-AP32C | Label Clear 32 Oz All Purpose | | 67,150 | 4,849.77 |
| LABEL-BAR COD | Label - 3 Pack Bar Code | | 49,700 | 268.38 |

# SCHEDULE 1.1(b)

3/1/2010                                              Inventory Quantity on Hand

| Item # | Description | | Qty on Hand | Value |
|---|---|---|---:|---:|
| **WS** | Sierra Chemicals - West Sacramento | | | |
| LABEL-BOXAP1G | Label-Box AP 1Gallon Case | | 50,703 | 702.24 |
| LABEL-BOXAP246 | Label-Box AP246 | All Purpose - 24oz 6 Bottles | 540,558 | 7,139.15 |
| LABEL-BOXAP326 | Label-Box AP326 | All Purpose - 32oz 6 Bottles | 30,147 | 417.54 |
| LABEL-BOXCC1G | Label-Box CC 1Gallon Case | | 51,000 | 706.35 |
| LABEL-BOXCC246 | Label-BoxCC246 | Concentrated - 24oz 6 Bottles | 2,869 | 39.74 |
| LABEL-BOXCC326 | Label-BoxCC326 | Concentrated - 32oz 6 Bottles | 88,250 | 1,222.26 |
| LABEL-BOXGC1G | Label-Box GC 1Gallon Case | | 57,000 | 789.45 |
| LABEL-BOXGC24 | Label-Box GC246 | Glass Cleaner - 24oz 6 Bottles | 496,468 | 6,555.86 |
| LABEL-BOXGC32 | Label-Box GC326 | Glass Cleaner - 32oz 6 Bottles | 58,102 | 804.71 |
| LABEL-CC1GB | Label - Concentrate 1 Gal Back | | 16,438 | 657.52 |
| LABEL-CC1GF | Label - Concentrate 1 Gal Frnt | | 16,438 | 657.52 |
| LABEL-CC24 | Concentrate 24oz Label | | 14,966 | 598.64 |
| LABEL-CC24C | Label - CC24oz Clear | | 19,918 | 1,030.76 |
| LABEL-CC32 | Label 32 Oz Concentrate | | 70,654 | 3,600.53 |
| LABEL-CC32C | Label Clear 32 Oz Concentrate | | 32,600 | 2,233.10 |
| LABEL-DG326 | Degreaser Label 32oz | | 6,932 | 277.28 |
| LABEL-GC1GB | Glass Cleaner 1 Gallon Back | | 21,916 | 876.64 |
| LABEL-GC1GF | Glass Cleaner 1 Gallon Front | | 27,716 | 1,108.64 |
| LABEL-GC24 | Label for 24 oz Glass Cleaner | | 71,784 | 2,728.08 |
| LABEL-GC24C | Label - GC24oz Clear | | 14,984 | 775.42 |
| LABEL-GC32 | Label 32 Oz Glass Cleaner | | 28,945 | 1,172.94 |
| LABEL-GC32C | Label Clear 32 Oz Glass | Cleaner | 102,000 | 6,987.00 |
| LABEL-RF1GF | Ranch & Farm 1Gal Label Front | | 5,000 | 200.00 |
| LABEL-RF32 | Label 32 Oz Ranch & Farm | | 10,000 | 380.00 |
| PALLET TRAY - W | Pallet Tray - White | | 625 | 937.50 |
| POWER PANEL 2 B | Power Panel Ladder with | two brackets per unit | 3 | 98.88 |
| SHRINK BANDS | Shrink Bands | | 9,399 | 631.86 |
| | | | | **84,056.65** |
| **SUP** | | | | |
| BOTTLE24 | 24 Oz Clear PET Bottle | 28/400 Finish | 29,150 | 6,893.92 |
| BOTTLE32 | Bottle 32 Oz 28/400 Carraffe | | 898 | 215.45 |
| SPRAYER-BL | Sprayer Blue | | 8,280 | 1,359.90 |
| SPRAYER-C | Sprayer Clear | | 1,838 | 404.36 |
| | | | | **8,873.62** |
| | | | | **122,660.15** |

# SCHEDULE 1.1(b)

3/1/2010                                  Inventory Quantity on Hand

| Item # | Description | | Qty on Hand | Value |
|---|---|---|---|---|
| **WSO** | Obsolete Inventory - West Sacramento | | | |
| **OBS** | | | | |
| 8967233PKM | HSN 3 Pack - Master Carton | 4 Boxes of 8967233PK | 4,000 | 17,105.78 |
| | | | | **17,105.78** |
| **PKG** | | | | |
| CAP | Cap 1 Gallon | | 15,400 | 1,036.40 |
| CARDBOARD | Cardboard | | 12,055 | 12,055.11 |
| | | | | **13,091.51** |
| | | | | **30,197.29** |